# REPORTS.

## MERRIMACK,

### JULY TERM, A. D. 1844.

### CONCORD BANK *v.* ROGERS.

In an action against all the surviving makers of a note, the principal not being within the jurisdiction, nor having been reached by the process, is not a competent witness for the other defendants; at least, without being released.

It is not competent for sureties on a note, to prove in defence to an action upon it, that they were induced to sign as such, by reason of the agreement or promise of the agent of the creditor that a mortgage should be taken of the principals sufficient to secure the payment.

A creditor who has commenced an action against the principal, may discontinue it without prejudice to his rights against the sureties, whether property was attached in the action or not.

ASSUMPSIT on a note dated February 12, 1839, and made payable to the plaintiffs, or order, for $17,000, on demand, with interest annually, and signed by Josiah Rogers, Josiah Rogers, Jr., Lewis Downing, surety, George Kent, surety, Theodore French, surety, John Brown, surety.

Josiah Rogers and John Brown deceased before the commencement of this suit; Josiah Rogers, Jr., being without the State, no service was made upon him. The defendants pleaded the general issue; with a brief state-

ment, claiming to be allowed for 6,530,065 feet of timber, sold to the plaintiffs in the State of Maine at $3.50 per thousand; and, also, for a further sum of $5,000, recovered by the plaintiffs on the sale of lands mortgaged to them by the principal to secure the payment of this note. The defendants proposed to prove, that at the time the note was made, the sureties were induced to sign as such, by and in consideration of a promise on the part of the bank, made by George Kent its cashier, that the bank should take from the principals, mortgages on real estate sufficient to secure the note and save the sureties harmless, which the bank had failed to do; by which they contended that the sureties were discharged. To this the plaintiffs objected, that it would be admitting evidence of a verbal contract to control the written one, made at the same time. The deposition of Josiah Rogers, (the above named Josiah Rogers, Jr.) offered by the defendants, was admitted to be read to the jury. The plaintiffs objected on the ground of his interest and of his being a party named in the writ, and, also, because the deposition itself contained matter inadmissible if he were a legal witness. No other evidence was offered to show any verbal contract, such as the defendants proposed to prove above.

The court instructed the jury, that if the bank, at the time the note was made, became a party to a verbal agreement to procure the sureties to sign as such, whereby the sureties were induced to sign the note when they would not otherwise have done so, and failed to fulfill the agreement, it was such a fraud upon the sureties as would discharge them.

There was evidence tending to show that the bank appointed Joseph Low the special agent of the bank to secure and collect the claims of the bank against the two Rogers; and immediately, on the 13th of May, 1840, he sued out a writ against them, and went with an officer to

the house of Rogers senior, and told him, that he had come to attach all of his property; that said Rogers then informed Low, that all his and his son's property was mortgaged to sundry persons, and there was nothing which he could attach. Whereupon Low returned and called on Downing, and wished him to show the officer Rogers' property. Downing declined to show any property to be attached on that writ, in which he said he had no interest, but said he would assist if Low would get a writ on the note here in suit, and on which he was surety. The next morning Low procured the writ on this note, and told Downing what Rogers said about the mortgages. Downing replied that he did not wish to incur any risks or costs by reason of attaching the property mortgaged, and Low told him that he had determined to attach it, and would do so, and would proceed at the risk of the bank, and would not subject him to any expense in consequence of the attachments. Thereupon Theodore French, another surety, went with the officer, who attached a large quantity of lumber, hay, grain, farming tools, and stock, in Bow, Hooksett, Pembroke, and Allenstown, and held possession of it for the space of six days, when the mortgagees demanded it of the officer, and threatened to prosecute him for it. The officer called on the directors of the bank for an indemnifying bond, which they refused to give; and Judge Darling, one of the board, told him to give up the property, which he did; and the action was stopped on the 20th day of May, 1840. No evidence was offered tending to show any notice to French and Downing of this relinquishment of the property and stopping of the action, other than what resulted from their vicinity to and business with the bank. The evidence further tended to show, that soon after this transaction French and Downing entered into a negotiation with the bank to sell a large quantity of lumber in Maine belonging to the Merrimack Lumbering Company, of

which the signers of this note were members, which lumber was to be appropriated to the payment of this note ; and that in August following, the contract was closed and the lumber delivered to the agent of the bank.

The defendants also offered evidence tending to show, that the mortgages on the personal property of the Rogers which was attached as aforesaid, were all fraudulent and void, and if the bank had not relinquished the attachment, it might have availed itself of the property so attached ; and contended, that inasmuch as the bank relinquished the attachment without the consent of the sureties, they were discharged, as the bank was bound to hold on to the attachment for their benefit. To 'this evidence the plaintiffs objected ; but the court admitted it, and instructed the jury, that if the bank caused the property of the principals to be attached, which there was no reason to doubt might be holden, it was bound to hold on to it for the benefit of the sureties, and as trustees for them, or account for its value to the sureties ; but if, at the time, circumstances existed which might raise a reasonable doubt whether, by holding on the bank might not be subjected to a lawsuit and costs, and risk of losing it, the bank was not bound to incur the risk, unless the sureties for whose benefit it was to be incurred, would indemnify the bank ; that if the attachment was made by the direction of the sureties, the bank was bound to notify them before it relinquished it ; but if the attachment was made by direction of Low, and the sureties told him that they would not take any risk, then the bank was not bound to notify them, but might relinquish the attachment, if they had reasonable ground at the time to apprehend that the mortgagees would hold it, notwithstanding it might afterward appear that the mortgages were void ; and, that in any event, if the jury would fairly infer from all the evidence, that the sureties must have known what was done, and did not object or offer to

indemnify the bank, they might presume their assent to what was done, and the sureties would be estopped from claiming any allowances on account of the attachment.

The jury found a verdict in favor of the plaintiffs for a small sum, and the plaintiffs moved to set it aside, and for a new trial, for the admission of illegal and improper evidence, and for error in the instructions of the court.

*Perley,* for the plaintiffs.

The deposition of Rogers was inadmissible. *Jewett* v. *Davis,* 6 N. H. 518; *Bowman* v. *Noyes,* 12 N. H. 302; *Haines* v. *Dennett,* 11 N. H. 180; *Bank* v. *Rix,* 10 N. H. 201; *Bank* v. *Billings,* 17 Pick. 87.

He was permitted to state that the fraudulent agreement was made between the bank and the defendants.

The evidence, if any, is, that at the time of making the note, it was agreed that the defendants should not pay it unless the bank should take the agreed security from the principals by means of a mortgage. Such an agreement would contradict the terms of the note itself. *Barry* v. *Morse,* 3 N. H. 132; *Hodgdon* v. *Waldron,* 9 N. H. 66.

We do not object to insinuations of fraud; but there is no evidence to prove it. This attempt is a method of evading the law, which does not permit the verbal contract to control the written.

The attachment was relinquished by stopping the suit. The charge of the court was, that the plaintiffs were bound to hold on to the attachment, as the trustees of the sureties.

We say, that the bank was not bound to commence the suit, although requested. *Davis* v. *Huggins,* 3 N. H. 231; *Sibley* v. *McAllaster,* 8 N. H. 389; *Mahurin* v. *Pearson,* 8 N. H. 539. And if not bound to commence one, they were not bound to prosecute it. An attachment is but an incident to a suit, and, if entitled to abandon the suit, it follows that they were not bound to hold upon the

attachment. *Paige* v. *Webster*, 15 Me. 249 ; *Bellows* v. *Lovell*, 4 Pick. 153 ; S. C., 5 Pick. 307. The contract of the sureties was to pay ; they had no right to wait the result of a suit against the principals. If there had been no doubt concerning the validity of the attachment, the plaintiff might have abandoned it ; but here was a conflicting title, valid in form. It would be unreasonable to put a creditor to try every such case by jury. It would prevent all attachments. There is a difference between attachment and mortgage. Indemnification was declined in this case. The reason, however, why a creditor must hold the property, is the right of the surety to be substituted in his place. This right he can not claim without first paying the demand. The creditor may elect whom to sue of the parties severally held.

*Pierce*, for the defendants, admitting the sufficiency of the exception to Rogers' deposition, argued, that the attachment, having been made by concert with Downing and French, could not have been abandoned without their consent. 3 Har. Dig. 2064 ; 2 Vesey, Jr., 540 ; 6 Vesey, Jr., 754.

The attachment was calculated to lull the sureties into security. 8 Pick. 121 ; 4 Johns. 139. When the creditor has the means of satisfaction actually or potentially, the surety is discharged, if he let it go.

Woods, J. This is an action brought against the defendants as joint and several makers of a promissory note, payable to the plaintiffs. One of the principals and one of the sureties is dead, and the other principal, not having been within the jurisdiction, has not been served with process, and is not before the court as a party ; and the suit is defended by the remaining sureties only.

A verdict having been recovered by the plaintiffs for a sum materially less than they claim in the action, a motion has been submitted by them to set it aside for

exceptions taken at the trial, to evidence supposed to have been improperly admitted, and instructions communicated to the jury, relating to the law applicable to the facts proved, that are alleged to have been erroneous.

One exception is, that Josiah Rogers, who, by the name of Josiah Rogers, Jr., signed the note as a principal, and has been included in the writ as a defendant, gave a deposition which the court permitted to be used at the trial. It is quite obvious, if we lay no stress at all upon the fact that he is nominally a party to the suit, that he has an obvious interest in the result of it, which disqualifies him from testifying ; since, whatever judgment the plaintiffs recover against the parties who defend, they being his sureties, it will, if paid by them, be evidence in their favor in an action against him for their indemnity. *Jewett* v. *Davis*, 6 N. H. 518.

Another exception is, that the court permitted the introduction of evidence to prove that the sureties were induced to sign the note by an agreement made by the plaintiffs through their cashier, that the bank would take measures to secure the payment of the note, by taking a sufficient mortgage of real estate from the principals. An obvious answer to this is, that it shows a different agreement from the one which the parties have reduced to writing. If the defendants gave the note upon the agreement that the plaintiffs should take a mortgage of land sufficient to secure the payment of it, it would follow, according to the theory of the defence, that a note absolute in its terms was to bind some of the parties to it, only upon the event of a further action on the part of the bank, that might or might not be possible. This would be contrary to a well settled and salutary rule of evidence, which precludes the introduction of parol evidence to contradict or alter the terms of a contract which the parties have reduced to writing. *Spring* v. *Lovett*, 11 Pick. 417 ; *Hanson* v. *Stetson*, 5 Pick. 506.

If it were possible to confound this case with those in which the failure of the consideration of the note has been permitted to be shown in the defence of an action brought to enforce the payment of it, by supposing that this agreement of the bank formed any part of the consideration upon which the sureties were induced to sign it, the evidence is clear that such would be no more than a part of the consideration, and would, therefore, form no ground of defence. If such an agreement was made, and could be legally proved, the parties seeking to avail themselves of its benefits must do so in an action founded upon it; for it is very plain that it can not be used as an agreement to defeat this suit.

The defendants, however, urge this undertaking of the bank as a fraudulent device to induce them to sign the note, which, by reason of the fraud, they seek to avoid. But the case wholly fails to furnish evidence upon which fraud could fairly have been found. All that the evidence tends to show is, that the bank made the agreement, and did not keep it. It would be an unauthorized presumption that should, without any indications beyond what those facts supply, establish on the part of the bank, a fraudulent and collusive purpose in their dealings with these parties. We think that the evidence does not appear from which an inference of fraud can fairly be drawn by a jury, and that it was erroneously left to them to consider such a question upon the evidence that was produced.

Another exception to the verdict is, that the court instructed the jury, that if the bank caused the property of the principals to be attached, which there was no doubt might be held, it was bound to hold on to it for the benefit of the sureties, and as their trustees.

As a general rule, a surety has a right to the benefit of any security which the creditor or a co-surety may have taken of the principal debtor; and if the holder of such security does any thing to impair it, by releasing it, or

Concord Bank *v.* Rogers.

otherwise, he loses, to the extent of the value of such security, his claim upon the surety, or for contribution. That is a well-settled principle ; but it does not go to the length of imposing any particular duty upon the creditor to take active measures to avail himself of that security, or to satisfy his debt out of it, instead of calling upon the surety. Far from it. The only right which the latter has to the fund thus pledged for his indemnity, is upon paying the debt himself, and then and thereby becoming substituted in the place of the creditor for the sake of the remedy. *Mahurin* v. *Pearson,* 8 N. H. 539 ; *King* v. *Baldwin,* 2 J. C. Rep. 554.

Neither can the surety require the creditor to sue the principal. But if he has already done so, and has a judgment against him which, by reason of the lien which it creates, or for any other cause, is more advantageous to a surety seeking indemnity against the principal, than would be an action in his own name, the authorities show, that by satisfying the just demands of the creditor, he may take an assignment of such judgment, and, in the name of the creditor, use it for the purposes adverted to ; and this is a benefit which the creditor is obliged to accord to him in proper cases. *Hayes* v. *Ward,* 4 J. C. Rep. 123 ; *Clason* v. *Morris,* 10 Johns. 524.

It is possible, that in analogy to these equitable rights of a surety, some claim might be founded to a right on his part, upon offering full indemnity against costs, and paying the entire debt, to be permitted to take the place of the creditor who has proceeded by an attachment to secure the claim against the principal debtor. But no such case is presented, nor is an opinion upon such a case required. *Matter of M'Kinley,* 1 Johns. Cas. 137.

The extent of the general principle of equity pervading this subject is, that the creditor shall do nothing that shall impair or defeat the rights of substitution which belong to the surety ; but that, on the other hand, he is

not held to the performance of any active service for the preservation of the rights of the surety. We may say, in the words of the wholesome maxim, "*Jura vigilantibus non dormientibus subveniunt.*" He can not touch the security till he has first paid the debt. The safety of the creditor for whose benefit it is primarily taken, will not admit of any such interference of another that might tend to impair it.

These principles seem to be well established in equity. They appear to provide sufficiently for the surety without conferring upon him the power of requiring the creditor, upon notice, to sue the principal debtor, or, suing him, to secure his debt by attachment. Nor are we referred to a case that holds, that having commenced an action, he shall not be permitted, if he sees cause, to discontinue his action, whether he has made an attachment or not. The same reason that would require a creditor to persist in a proceeding tending to secure his debt, and so incidentally to relieve the surety, would require him to commence one upon the occurrence of a favorable opportunity, and even demand of him vigilance in seeking one.

But the conclusive argument is, that no principle is found that, in terms or by any just analogy, sustains the case made by the defendants. They have done nothing that entitles them to require the creditors to prosecute their remedy, or to require them to cede to themselves the right to do so; and the creditors have done nothing to impair the rights of the surety, or to render their indemnity more difficult than it would have been, independently of any action of the plaintiffs.

We have proceeded thus far upon the general ground that the remedy of the creditor against the debtor is in his own hands. He may use it or not, as he sees occasion, and may retire from the prosecution of it whenever his sense of his own interest dictates to him to do so. *Fulton* v. *Matthews,* 15 Johns. 433.

Concord Bank *v.* Rogers.

But a stronger case in behalf of the plaintiffs is made by facts which are in evidence. The defendants, some of them at least, knew of the intention of the plaintiffs to make the attachment, and declined to participate in the hazards or expenses of the proceeding. They had an opportunity to make the suit their own, and declined to accept of that participation in it which alone could have furnished them with any cause to complain that the plaintiffs abandoned it. And if it could be admitted, as a general principle, that their relations to the cause and to the parties would give them any right, such as they claim, to require the plaintiffs to persist in their suit, it might admit of being very gravely questioned whether their declining the offered participation would not deprive them of the benefits of such a general rule, and be held to be a waiver of its advantages.

The conclusion, therefore, is, that all the evidence of the commencement of the action by the plaintiffs and its discontinuance was misapplied. The instructions were erroneously based, and the verdict must, for that cause, as well as for the others that have been indicated, be set aside, and a

*New trial granted.*