### BAXTER SMITH *vs.* ISAAC CUNNINGHAM and others.

### October Term, 1875.

TRUST ASSIGNMENT—MUTUAL RIGHTS OF BENEFICIARIES.—Where the holder of one of several notes secured by a trust assignment without preference has, under a bill filed by him against the grantor and trustee alone, had the property sold and the proceeds applied to the satisfaction of his note, the holders of the other notes may, by suit in this court, hold him liable for their proportion of the proceeds.

DEATH OF PARTY RENDERS SUBSEQUENT PROCEEDINGS VOID.—In this state the death of a defendant to a suit, although the fact be unknown to the other parties and unnoticed of record, renders void as to him and his representatives all proceedings in the cause taken thereafter; and, therefore, a subsequent appeal by a co-defendant, under which a decree rendered in his lifetime against both for fraud was reversed, will not enure to the benefit of his estate.

*Smith, Baxter & Allison,* for complainants.
*J. A. Cartwright,* for Cunningham.
*R. Ewing,* for Carland's estate.
*Hicks,* for Bell.

THE CHANCELLOR:—On the 23d of March, 1867, Clay Roberts and John L. Lonas sold to R. F. Bell the furniture

and fixtures in the City Hotel, at Nashville, for $21,250, paid and to be paid as agreed upon. In part of this consideration Bell executed four notes of that date, payable to Roberts & Lonas, one for $1,000 at thirty days, one for $1,500 at sixty days, one for $1,500 at ninety days, and one for $1,250 at four months. On the 30th of March, 1867, Bell conveyed, by deed of that date, a small tract of land in this county to W. S. Whiteman in trust to secure these notes, with power of sale if they, or any part of them, were not paid at maturity. The furniture and fixtures sold were the joint property of Roberts, Lonas, and John Carland, the latter being a silent partner, and the firm name being Roberts & Lonas, and the notes were made payable to the firm in that style. Shortly after the trade, and about the 6th of April, 1869, these three parties agreed upon a division of the notes. The first and fourth were delivered to Lonas, and assigned to him, by special endorsement without recourse, by Clay Roberts. The first of the $1,500 notes was delivered to Roberts, and by him sold, before maturity, to Enoch Cunningham, and endorsed in the firm name. The other $1,500 note was delivered by Lonas to Carland, endorsed in the firm name. The settlement was, it seems, a complete and final settlement, each party taking his share without recourse.

On the 18th of May, 1867, Bell filed his bill in this court against Roberts, Lonas, and one Young, stating the purchase of the furniture and fixtures, and the terms of the trade, and what he had done in compliance with those terms, and, among other things, that he had paid in cash $3,250, had assumed a debt of Roberts & Lonas to one Hare for $8,750, and to one Chadwell for $4,000 ; charging that Roberts, Lonas, and Young had combined and confederated together to induce him to purchase the property at much more than it was worth ; that he had been badly cheated, and asking that he be only held liable for the real value of the property ; that the amount he agreed to give be abated ; that a decree be rendered against the defendants

for whatever it might be found that he had paid for said property over its true value, and for general relief. He also prayed and obtained an injunction against the transfer or disposition by Roberts & Lonas, or Lonas, of the notes above described, except the one sold to Cunningham, and further prayed that, on final hearing, the notes be delivered up to him and cancelled. On the 4th of June, 1867, Bell filed an amended bill to bring Carland before the court, charging that he was a silent partner of Roberts & Lonas, had combined with the other defendants to cheat and defraud him, and held one of the notes as aforesaid.

Such proceedings were had in this cause that, on the 19th of February, 1870, a decree was rendered to the effect that the defendants had perpetrated a fraud upon the said Bell in selling him said property at a price far above its real value, and that, as part of the consideration agreed to be paid by Bell had passed into the hands of third persons, relief could only be afforded by compensation; that the injunction granted be made perpetual; that the defendants deliver up the notes held by them as aforesaid, and that they be cancelled; that the complainant have a deduction in the amount agreed to be paid for said furniture and fixtures of the difference between the amount so agreed to be paid and the actual value, and it was referred to the master to ascertain and report such value. The master took the account ordered, and found the amount due to Bell as of the 19th of October, 1871, to be $12.048.42. On the 3d of November, 1871, this report was in all things confirmed, and it was decreed that " complainant (Bell) recover of the defendants, Clay Roberts, John L. Lonas, John Carland, and Acton Young, the sum of $12.048.42, with interest from the 19th of October, 1871, and the costs of the cause." From this decree, although Roberts, Lonas, and Carland prayed an appeal, only Lonas in fact appealed by taking the oath prescribed for poor persons. Upon this appeal, on the 24th of March, 1875, the supreme court reversed the decree of the Chancellor, and gave a decree

against Bell and his surety in the prosecution for the costs of the court below and of the supreme court.

After this decree of the supreme court, Lonas transferred the two notes for $1,000 and $1,250 to the complainant, Baxter Smith.

In the meantime, on the 14th of August, 1867, Enoch Cunningham filed his bill in this court against Bell and Whiteman, to have the trust deed executed for his benefit, as the holder of the first of the $1,500 notes. Bell answered, admitting the facts, but stating the pendency of his bill, and submitting that Cunningham was not entitled to any priority of satisfaction over the holders of the other notes secured by the trust, and that the foreclosure must await the decision of his suit. Cunningham died, and the suit was revived in the name of the defendants Cunningham and Cartwright, as his administrators. On the 22d of July, 1874, a decree was rendered in said cause declaring that the complainants had a lien on the land for the amount of the note sued on, with interest, and ordering a sale in satisfaction thereof. The land was accordingly, on the 24th of October, 1874, sold to the defendant Harrison, for $2,000, and on the 2d of December, 1874, the sale was confirmed.

The present bill was filed on the 17th of July, 1875, by Baxter Smith, as assignee of Lonas, against Cunningham's administrators, Bell, Harrison, and the administrator of John Carland, setting out the foregoing facts, and insisting that Cunningham's administrators were not entitled to the whole of the proceeds of the sale of the land, but that the complainant, by virtue of the notes held by him, should share *pro rata* therein.

It is too clear for argument that—the deed of trust from Bell to Whiteman being intended to secure all of the four notes executed by Bell to Roberts & Lonas, and giving no preference to any one of these notes over the others—the proceeds of sale, if insufficient to pay the whole debt embraced, should be applied *pro rata* to the satisfaction of each of the notes. Equality is equity in such cases, and so it has been

expressly decided. *Ewing* v. *Arthur*, 537. And see *Penne-baker* v. *Tomlinson*, 1 Tenn. Ch. 111, 119, and cases there cited. The delay, moreover, in asserting the lien in favor of the other notes is sufficiently accounted for by the pendency of the Bell litigation. If there were nothing else in the case, the complainant's claim to relief would be irresistible.

Nor is there anything in the objection that the complainant does not show a legal title to the notes sued on, the objection being rested on the fact that the notes were only assigned to Lonas by Roberts, whereas the assignment should have been made by Carland also. But the legal title, however important at law, is a matter of no consequence in equity. It is enough for this court that the parties beneficially interested are before it. The evidence of Roberts, which has been taken, shows that he disclaims any interest in these notes, and the evidence of Lonas is that he has assigned and delivered the notes held by him to the complainant, Smith. Carland's administrator, the only other person in interest, is before the court, and sets up no claim to the notes sued on. The complainant is, therefore, the equitable owner and entitled to relief, if there is nothing more in his way.

It is argued that the record in the case of *Bell* v. *Roberts and others* shows that Lonas did not perfect his appeal properly. He appealed by taking, in open court, the oath for poor persons. The oath prescribed by law in such cases is that the affiant, owing to his poverty, " is unable to bear the expenses of the action he is about to commence." Code, § 3192. The oath actually taken was that, owing to his poverty, he was " unable to give security." It is said that the latter oath was not sufficient to sustain the appeal, for which *Hale* v. *Landrum*, 2 Humph. 32, is cited. And, perhaps, upon the intimation made in that case, if objection had been taken at the first term of the supreme court after appeal, it might have prevailed. But the court would have either allowed an amendment or granted a writ of error upon a proper oath. Be this as it may, the supreme court

has decided that it had jurisdiction, and reversed the decree upon Lonas' appeal. This is a stubborn fact, which cannot be got over, or under, or around. It is *un fait accompli*—a fixed fact, conclusive upon the court and everybody else. Third persons have no right to insist upon errors and irregularities in judicial proceedings if the parties themselves choose to ignore or overlook them.

If it be conceded that Lonas' appeal only took the case up as to him, the reversal of the decree below and the dismissal of the original bill as to him left him at liberty to claim all his rights in the proceeds of the sale to Bell, precisely as if no such bill had been filed. The partners themselves, before the litigation commenced, determined what their rights were by giving him two of the notes under consideration—the two now sued on. I am not prepared to say that such a settlement would have been conclusive upon Bell. It may be that he would have had the right to insist upon ascertaining, by a partnership account, precisely what Lonas' interest was. If he chooses to acquiesce in the settlement, no other person has any right to complain. Certainly Cunningham's administrators have not, for their intestate bought the note as one of four notes embraced in the same deed, and cannot object that all four of the notes are allowed to share the trust funds equally.

I am of opinion, therefore, that the complainant is entitled to share in the fund in controversy.

The Carland note presents greater difficulties. It seems that, pending the Bell suit, and between the rendition of the decree in this court of the 19th of February, 1870, when the notes were decreed to be delivered up, and the final decree of the 3d of November, 1871, from which Lonas appealed, to wit, on the 5th day of June, 1871, Carland died. No notice was taken of his death in that cause. The cause proceeded as if he were still living, and doubtless under the belief, so far as the complainant was concerned, that he was alive. His death could, of course, have no effect on the rights of Lonas. The complainant Bell might

have allowed the suit to abate as to Carland, or considered. the further proceedings as void as to him, and yet litigated. his rights with the other parties. What effect did his death. have on the rights of his personal representative?

If it be conceded that all proceedings taken after his death were as to him void, the decree of the 19th of February, 1870, rendered when he was alive, would remain in full force. Either party might, within the time prescribed by law—namely, within two terms after the death has been suggested and proved—revive the suit, and proceed with it. according to law. It is probable, also, under our decisions, that either party might file an original bill to have the decrees and proceedings taken after his death set aside as void. *Morrison* v. *Deaderick*, 10 Humph. 342 ; *Kelly* v. *Hooper*, 3 Yerg. 395 ; *Carter* v. *Carriger*, 4 Yerg. 411. The inclination of our supreme court has been to treat the proceedings after a party's death as void for all purposes.

The weight of authority seems to be that when jurisdiction has been obtained over a defendant in his life-time, a judgment rendered against him subsequent to his death is not void, but only erroneous and voidable. Freem. on Judg. §§ 140, 153, and cases cited *pro* and *con*. To the authorities cited by him may be added the following : *Warden* v. *Tainter*, 4 Watts, 270 ; *Garrard* v. *Henry*, 6 Rand. 110 ; *Blaine* v. *Scott*, 1 Baldw. 287 ; *Whiting* v. *Bank of United States*, 13 Pet. 6 ; *Rogers* v. *Paterson*, 4 Paige, 409 ; *Bank of United States* v. *Weisiger*, 2 Pet. 481 ; *Davies* v. *Davies*, 9 Ves. 461.

The reason is that parties and privies to judgments and decrees can never impeach them collaterally, but only by due course of law, by petition for new trial or rehearing, writ of error, appeal, or bill in chancery. Strangers are not allowed to question them even directly, unless, when prejudiced, they show that they were obtained by fraud or collusion. In *Garrard* v. *Henry*, 6 Rand. 110, and *Warden* v. *Tainter*, 4 Watts, 270, the principle was extended to parties who died before the commencement of the suit. And our statute

law is in accord with these last decisions in certain cases in chancery where the defendant is allowed to be proceeded against without personal service of process. Code, § 4380.

The decisions of our supreme court are, however, otherwise, and are conclusive upon me. Even in that view the decree which settled the rights of the parties and expressly ordered these notes to be delivered up remains in full force against Carland, unless he or his representative can claim the benefit of the subsequent appeal by Lonas. This is insisted upon on the ground that, Carland being dead, Lonas was clothed with the legal right of controlling the litigation as surviving partner, and upon the further ground that Roberts, Lonas, and Carland, having a joint interest in the transaction sought to be impeached, the defence of one would enure to the benefit of all. Both of these positions depend upon the law touching joint defences, and the *status* of the parties in this particular case.

It was held in *Petty* v. *Hannum*, 2 Humph. 102, where a partnership had been dissolved, and in the distribution of the effects a note had fallen to the share of one of the partners, and a bill was filed against both partners, attacking the consideration of the note, that a *pro confesso* taken against the other partner should not affect the rights of the partner to whom the note had fallen, he having answered and successfully resisted the bill. The decision was put upon the ground of the dissolution, the separate interest acquired by the distribution of the partnership effects, and the impossibility of the defendant really interested compelling his late copartner to answer. The court refer, however, with approval to the case of *Clason* v. *Morris*, 10 Johns. 524, where the court of errors of New York, after investigation, held that, upon bill filed against two defendants jointly interested in the matter of litigation, and *pro confesso* against one defendant, if the other answer and disprove the complainant's equity the bill will be dismissed as to both. The principle was extended to the case of trustee and *cestui que trust*, where the former made defence and the

latter suffered a *pro confesso,* in *Cherry* v. *Clements,* 10 Humph. 552 ; and to the like case of vendor and vendee defendants, in *Hennessee* v. *Ford,* 8 Humph. 499. It was qualified so as not to extend to a defendant having a distinct right, in *Phillips* v. *Hollister,* 2 Coldw. 269.

Our supreme court, in *Petty* v. *Hannum,* suggests that the New York court was divided upon the point in *Clason* v. *Morris.* But Chancellor Bland, in his able and elaborate review of the authorities in *Lingan* v. *Henderson,* 1 Bland, 236, 266, concludes that the court of appeals were unanimous on the general principle ; and is of opinion that, both at law and in equity, where the defence made by one defendant goes to the whole cause of action against all the defendants, and the plaintiff fails to establish his case in opposition to such defence, he cannot be relieved in any way whatever, although his claim should be confessed by the other defendants. The reason is that a plaintiff can only obtain relief upon the strength of his own title ; and, also, because every court of justice must act consistently, and cannot be allowed to contradict itself by saying, in the same decree and the same case, that the plaintiff has no cause of suit whatever, and that he has a just and well-founded cause of complaint. He cites a number of authorities, both at law and in equity, and, among others, to show the antiquity of the rule, Co. Lit. 125 ; *Martin* v. *Ayliffe,* Cro. Jac. 134 ; *Anonymous,* 2 Cas. Ch. 39 ; *Ward* v. *Meath,* 2 Cas. Ch. 173. To the authorities there cited may be added, in support of the general principle in equity, *Walsh* v. *Smyth,* 3 Bland, 9 ; *Cartigne* v. *Raymond,* 4 Leigh, 579 ; *Andres* v. *Lee,* 1 Dev. & B. Eq. 318 ; *Minor* v. *Stewart,* 2 How. (Miss.) 912.

But Chancellor Bland also clearly showed that, where the defence was individual, and did not go to the whole relief, the rule was different. He also held, in the subsequent case of *Walsh* v. *Smyth,* 3 Bland, 9, that the rule in regard to plaintiffs is that, where there is a ground of relief available to all, one may take advantage of it, while the other may abandon it by neglect. In the case before us all the

-defendants put in a common defence, and failed. The appeal was in the nature of a new suit in which the defendants became the actors. One of these defendants might avail himself of the right, while the others might neglect it.

The Code, § 3159, provides that any one or more of the parties to a judgment or decree may pray and obtain an appeal therefrom, the judgment remaining in full force against such of the parties as do not appeal. This language seems to imply a right of severance in all equity decrees, and some of the decisions seem to put that construction upon it. *Susong* v. *Williams*, 1 Heisk. 625, and *Meek* v. *Mathis*, 1 Heisk. 534. But I believe the later rulings are that a broad appeal by any one party from an entire chancery decree, where the matter is purely of equitable cognizance, carries up the whole case, so as to allow relief to be granted to those who do not appeal. *Wood* v. *Cooper*, 2 Heisk. 441 ; *Hudson* v. *King*, 2 Heisk. 561 ; *Frazier* v. *Tubb*, 2 Heisk. 662 ; *Reynolds* v. *Brandon*, 3 Heisk. 598 ; *Carnes* v. *Polk*, 5 Heisk. 244.

If this be the rule established, it would seem that it could only apply to a chancery case proper, not to a matter of legal cognizance conferred upon the court by statute or by acquiescence of the parties. In that view it becomes necessary to ascertain the character of Bell's original bill. Upon examination it is found to be a bill, not to set aside a sale as fraudulent, which would have been a matter of equitable jurisdiction, but to obtain a deduction or recoupment in the price of the property sold, and to have the same charged upon the defendants. In other words, it was an action for the fraud and deceit practised in the sale, and to recover damages therefor. If the matter of the sale had been realty, the jurisdiction would have been in equity. *Jopling* v. *Dooley*, 1 Yerg. 289. But, being personalty, it was a case strictly of legal cognizance, of which equity only acquired jurisdiction through its injunctive power, and beyond that by the answer of the defendant. *King* v. *Baker*, 1 Yerg.

450; Code, § 4321. It was on all fours with *Stockley* v. *Rowley*, 2 Head, 493, where the bill was for damages occasioned by the deceit in the sale of machine oil, occasioned by the false representations of the defendant's agent. The right to relief was in tort, and was clear, provided the complainant made out his case. *Conner* v. *Crunk*, 2 Head, 249; *McLean* v. *Houston*, 2 Heisk. 37.

An appeal from such a judgment at law by any one of the defendants would leave it in full force as to the residue. *Puckett* v. *Ainsworth*, 1 Yerg. 254; *Osborne* v. *Poe*, 6 Humph. 111. And in *Boggess* v. *Gamble*, 3 Coldw. 148, and *Bently* v. *Hurxthal*, 3 Head. 378, the fact that the judgment was void as to one of the defendants who did not appeal was held not to affect the validity of the judgment as to those defendants who did appeal.

I am of opinion, therefore, upon one or both of the grounds stated, that the appeal of Lonas did not take the case up as to his co-defendants, and that the decision of the supreme court did not affect the validity of the decree below as to those who did not appeal. And it is very clear that the fact that Roberts, Lonas, and Carland had been partners in a fraud, so as to justify a recovery against them in tort, would not be such a partnership as to give the survivor a right to represent the decedent in the capacity of surviving partner. There can be no partnership in a wrong. The previously existing partnership in the property sold to Bell was not in controversy, had been terminated, and the parties had divided the proceeds without recourse on each other. The connecting link no longer existed. *Petty* v. *Hannum*, 2 Humph. 102; *Hall* v. *Lanning*, 91 U. S. 160.

The decree of the 19th of February, 1870, is, therefore, in full force as to Carland, and the note belonging to his estate, and ordered to be delivered up and cancelled. It is obvious, however, that the decree is still open to revision by the representatives of Carland, upon proper proceedings, and that any arrangement between Bell and Carland's representatives to terminate the litigation without further delay

would be valid. Neither the complainant nor the defendants, the administrators of Cunningham, have any right to dispute the validity of the claim as a lien on the trust property. They are estopped by the deed to do so, provided the note is, either by law or the agreement of the real parties in interest, found to be legal. At present, however, I can only declare its invalidity.

The result is that the complainants are entitled to a moiety of the net proceeds of the trust land. The entire costs will be paid out of the fund.