Spencer, J.
The first question which I have chosen to consider, is, as to the effect of the hills being taken pro confesso against Stanly, circumstanced as this case is. If Stanly was the *546 sole defendant, or had distinct rights, I agree that his default la appearing and answering would have been an admission of the facts, cliarged in the bill. In Davis v. Davis, (2 Aik. 21.) Lord Hardwicke says, with great-propriety, that the taking a bill pro coraj’gggg^ jn equity, is analogous to taking the declaration for true, where the plea or answer of the defendant is insufficient. He was there, however, speaking of a sole defendant; and, I believe, not a case can be found in which it is insinuated, that where there are two defendants having a joint interest, and one appears and' answers, and disproves the plaintiff’s case, that the plaintiff can have a decree against the other who had made default, and against whom the bill was taken pro confesso. It would be unreasonable to hold, that bécause one of the defendants had made default, the plaintiff should have a decree even against him, when the court is satisfied, from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree. Though I have not met with cases in equity to the point, yet pursuing the analogy between proceedings at law and in equity, we are not without very clear authority; for it is a well settled principle of law, that In actions upon contracts, the plea of one defendant enures to the benefit of all; for the contract being entire, the plaintiff must succeed upon it against all or none; and, therefore, if the plaintiff fails at the trial upon the plea of one defendant, he can-not ^ave judgment'against those who let judgment go by default.*
It would require the most binding authorities to induce me to yield my assent to such a proposition as that set up by thé respondents’ counsel; and, indeed, the result would be extraordinary, for if one defendant entitled himself to a decree, where the interest is joint and inseparable, a decree must be made in his favour as to a moiety of the matter in issue, and against the other who made default for the other moiety; that is, the plaintiff would get one half of a decree, and the other defendant the other half. It cannot be so •, we must consider C&sora’s defence as enuring to the benefit of 5'lardy.
I now proceed to examine the merits of the case; and the first inquiry will be, whether Ciason has a right to avail himself of the judgment recovered by Low against Sands ? This will depend on the fact, whether Ciason and Stanly were sureties for Sands or not in that transaction. This fact admits of no doubt.
Ciason, in his answer, avers the fact of suretyship, and he groves it* First, the endorsement of j&mds’s note by Clastm *547 and Stanly, and the passing of that note by Sands to Low, is prima facie evidence of the suretyship. This is proved by Joseph Slansbury. Secondly, Sands proves that Clason and Stanly endorsed the note on which Low’s judgment was rendered, as sureties, and for his accommodation.
Now, though Sands has been guilty of a fraud, we are not to intend that he is perjured, nor will his executing fraudulent deeds have any other effect than to render him suspected, when he comes to swear in opposition to a more credible witness. But there is no proof at all, on the part of the respondents, impeaching the fact to which he deposes. It cannot, then, be doubted, upon any rules of evidence with which I am conversant, but that the fact is completely made out that Clason and Stanly endorsed Sands’s note as his sureties.
That a surety who pays a debt for his principal, has a right to be put in the place of the creditor, and to avail himself of every mean the creditor had to enforce payment against the principal debtor, is a principle which I had supposed incontestable. The case of Parsons and Cole v. Briddock (2 Vern. 608.) has never been questioned. In that case, the plaintiffs were bound as sureties for Mr. Briddock, and had counter bonds. Briddock0 the principal, was afterwards arrested, and Dr. Briddock became his bail, and judgment was obtained against the hail. The plaintiffs being sued on the original bond, were forced to pay the money, and then brought their bill to have the judgment obtained against the bail assigned to them, to be reimbursed what they paid, and it was held, and so decreed, that the judgment against the bail should be assigned to the plaintiffs, in order to reimburse them what they had paid, with interest and costs. Lord Eldon speaks of this case as a strong one, but by no means with disapprobation. It is a much stronger one than the case before us; here Low had a judgment against Sands, the principal debtor; he had a judgment also against Clason and Stanly, the sureties. The sureties pay the latter judgment; Low then does, voluntarily, what equity would compel him to do ; he assigns the judgment he held against Sands to Clason alone. This is not like the cáse of a bond by two obligors, where one of them pays the debt, and then wants to sue at law, in the name of the obligee. At this day, such a suit •would not entitle the obligor, who had paid the money, to any remedy which he could not have, in an ordinary suit in his own name, for money paid, laid out and advanced; but as to the bond, the *548 payment by one, on the very instrument, is a satisfaction o£ tiiai debt, and the other obligor may plead it. Sands could not plead the payment of the judgment against Clason and Stanly, as á ' payment of the judgment against him. The respondents stand ill his place, and they can have no other or greater rights than Sands hád. That assignees of a bankrupt are bound by an equitable or legal lien, although they had no notice of its existence, is a very clear principle; (1 Bro. C. C. 420. 6 Ves. jun. 95. n. a.) for, as Sir Williani Grant observes, the assignment from the commissioners; by operation of law, passes thfc rights of á bankrupt precisely in the same plight and condition as he possessed them. (9 Ves, jun. 100.)
The doctrine contended for by the respondents’ counsel, that the lien created by Low’s judgment could not be extended and enforced in favour of Clason and Stanly, against Sands’s assignees, fhfcy being third persons, and strangers to it, is not sound. Thejr áre not third persons, but are precisely in the place of Sands ; besides, and which is also á sufficient answer to that objection, the liefi was not raised by the construction of equity, for it is a legal, not ah equitable lien. Low’s judgment was assigned to Clason solely; he, therefore, solely succeeded to Low’s lien. Stanly does not question that transaction ; Clason, therefore, must be deemed to have a distinct and separate right in that judgment.
The points next td be -considered are, whether Clason accepted the deed for the Washington lots, in such á manner as to conclude himself, and whether he has received 4,000 dollars in satisfaction of the other part of the agreement, and as a substitute for one half of the debt which was to have been paid out of á debt due Sands from the French government.
, There is no proof of the agreement or the acceptance of the deeds for the Washington lots, except Clason’s answer. His answer is certainly evidence against him; and it is also, on these points, evidence for him, unless disproved by one witness, and circumstances corroborating the testimony of that witness.
I can perceive nothing evasive in his answer upon these points; and should one part be susceptible of doubt and savour of evá- ■ ! sion, it would be incorrect to hold him down to that part, and disregard other parts of the answer which are full and explicit. Ah .answer, like any instrument, is to be construed by regarding it ás a whole, and by looking into the whole of it, and comparing one part with another. The mind of man is so ingenious, and the critic *549 looks with such a microscopic eye, that unless courts give a fair construction to papers, by looking through them, no man can make an answer, if the case be a complex one, without being subjected to the charge of perjury.
I am persuaded that, but for an oversight, his honour the chan-, cellor would not have considered the answer evasive as to the payment of the 4,000 dollars.
The answer is full and explicit, that the conveyance for the Washington lots was left with the appellant, as he supposes, in part performance of the agreement; but he denies that he accepted, or agreed to accept, the same, in any manner, or for any Other purpose than the agreement, and that he gave no receipt for it.
Then3¡ as I construe the answer, the deed was received by Clason in expectation of the fulfilment of the agreement and he has suffered it to remain in his custody as an inchoate transaction, as one step taken towards the performance of an entire contract» He has a right, therefore, to insist that it did not operate as a performance of the agreement.
I cannot conceive how the answer could be. more full than it is> in denying the payment of the 4,000 dollars. Clason says that yeither he, nor any other person for him, hath received any estate or effects, real or personal, from Sands, or any other person, in satisfaction, or upon any agreement or understanding whatever, for or towards satisfaction of the moneys due him or any part thereof.
Georgs Knox is the only witness relied on to disprove Clason’s answer. He testifies not to any fact he has seen or witnessed, but to Clason’s declarations; and it is certain that, in the case of Only v. Walker, (3 Atk, 407.) the master of the rolls considered the declarations of the defendant as a circumstance corroborating a fact sworn to by a. witness, and not as direct proof against the answer. Mr. Knox was. called on to testify after the lapse of many years; and it is impossible to say (if we yield our assent t© all he has testified, what Clason meant, when he said he had let out Sands, and had got four thousand dollars for his debt) to what debt he referred, or whether the 4,000 dollars was in money or the Washington lands. Knox is certainly incorrect that Clason told him he had obtained judgment for his debt amounting to 15,000 or 16,000 dollars. No such judgment appears, to. have, fxisted at any time.
*550 Giving to Knox’s testimony the utmost effect, it is one witness against the positive denial of the appellant, and there are no circumstances corroborating that witness of any weight or force. Whether the rule so well and firmly settled is just or unjust, we, are not liberty to examine: ita lex scripta est: and in my opinion (be answer of Clason must prevail.
I am, therefore, of opinion, that there is no ground for relief to the respondents, as respects the judgments; and the respondents having so. framed their bill as not to require the appellant to make his election whether to keep the Washington lots or not, but have prayed only that an entry of satisfaction of the judgments may be decreed, they have failed altogether, and the bill ought to have been dismissed, with costs.
Lewis, Wilkins, Bishop, Carl, Haight, Rouse, Stearns, Tabor, Tayler, and Townsend, Senators? concurred in this, opinion.
Thompson, J.
The respondents’ bill in the court of chan-. tiery had for its object, generally, a discovery of what was due from Comfort Sands, the bankrupt, to the appellant, Clason, and what payments he had received, and what property he had in his hands, belonging to Sands; and it prays relief against certain judgments which Clason was about enforcing against the estate of Sands.
The material and principal inquiry will be, whether the answer, ©f Clason has been disproved, so as to warrant the decree which has been made against him. It is an undeniable rule in chancery that the answer to a bill for discovery, being under oath, must be taken as true, unless disproved by two witnesses, or by one witness and circumstances warranting a presumption against the truth of the answer. (2 Atk. 19.) The respondents having thought fit to make the appellant a witness, they are bound by what he discloses, unless it is satisfactorily disproved. Where the answer and the testimony are at variance, it becomes a question of credibility. The answer is not to be discredited, or any presumption indulged against it, on account of its being the testimony of a party interested. He is. made a witness by his adversary, and it would be unjust to compel him to testify, and then consider his testimony unworthy of credit,, .because he is a party in the suit. This is not the light in which. *551 Cat aiiswef is received in chancery. It is considered equal to the oath of one witness. And to warrant a decree against the answer, it ought to be satisfactorily disproved.
It will be necessary, in order to test the case before us by this K'ule, to look particularly at the discovery sought by the bill, and the answer given to it; for I apprehend, that with respect to many, and, indeed, most of the facts which have been considered material m this case, the answer stands uncontradicted, and, of course, must be taken as true.
The bill prays a discovery, first, as to what was due from Ct, ■Sands to the appellant, on what account, and how secured; and, secondly, what effects or property of Sands had come to his hands in satisfaction of his demánds, and under what agreement or un - derstanding it was so conveyed, assigned, delivered or paid» In answer to the first inquiry, the appellant states his demand to consist of a judgment in favour of Nicholas Low against Sands for 5,812 dollars and 61 cents, and which had been duly assigned to him; a judgment in favour of Clason and Stanly against Sands for 5,874 dollars and 6 cents; and, also, a promissory note for 3,200 dollars, which Clason and Stanly had paid as endorsers for Sands» To the inquiry on what account the demands accrued, the answer states that they accrued by reason of his having become security for Saiids. These facts are uncontradicted, and we are not at liberty to reject them. What the legal effect and operation of the payment and satisfaction of the judgment which Low had recovered against Clason and Stanly, as endorsers for Sands, would be upon the judgment which he had against Sands, as the maker of the note, and which was assigned to Clason, will be noticed hereafter. With respect to the note for 3,200 dollars, the prima, facie presumption would be, that it was included in the judgment of Clason and Stanly against Sands, as they had declared upon it. But this presumption may be rebutted by proof showing that It was not included. (6 Term Rep. 607.) And the answer furnishes this proof. It is a direct and proper reply to the inquiry made of the appellant, as to what was due from Sands ; and is explicit that it was not included in the judgment. As to the amount of the appellant’s demand, and on what account it accrued, there is no variance between the answer and the proof, and it must be considered as established, that it consists of the two judgments, and the note which I have mentioned.
*552 The second branch of the discovery relates to the property received by Clason, and under what agreement it was received.
To this inquiry the answer states explicitly that the appellant has not received, nor has any other person received for him, or to his.use, from Comfort Sands, nor from any other person, on his behalf, any of Sands’s goods, moneys, debts, or any other thing, in payment and discharge of the said judgments, and the said 3,200 dollars, or of any part thereof, the whole of which amount, with the interest, is still justly due. This is as full and ample a negation of all payments as could possibly be made, and this general denial ought to be kept in view in the examination of the particular details of the answer; for the whole answer is to be taken together, and if any particular part is susceptible of a double meaning, or has the appearance of evasion, it ought to be so construed as to comport with the general denial. The detail is more the language of the draftsman, which the party may not be able to criticise, but the general denial is intelligible, and cannot but be understood by him; and, in this case, it is so broad and unqualified, that it must be taken for an absolute denial of the acceptance of the deed for the Washington lots, or the receipt of the 4,000 dollars as stated by him.
The answer of the appellant, as to the nature and terms of Ihe agreement between him and Sands, relative to the payment and satisfaction of his demands, is made evidence by the prayer in the bill for a discovery as to that agreement. And the answer states the agreement to have been, that the appellant was to be paid one half of his demand out of a debt due to Sands from the French government, and the other half in lots in the city of Washington, at the price originally paid for them by Sands. There is no evidence whatever tending to show that such were not the terms of the agreement. What is said in the answer as to the manner and circumstances under which the deed for the Washington lots was delivered, is drawn out by the inquiries in the bill. It states that the conveyance for these lots was left in the appellant’s possession, as he supposes, in part performance of the agreement before mentioned, but that he did not, at that time, to the best of his remembrance and belief, even examine it, nor did he accept, or agree to accept, the same in any manner, or for any purpose, other than the agreement aforesaid. This answer has been treated as equivocal and evasive, because it says he did not, at that time, accept, or agree to accept, the deed, leaving it open to the infer *553 xince that he might hax7e done it at some other time. There might be some plausibility in this criticism, if this part of the answer was to be taken alone, and unconnected with other parts. But when he adds, that he did not, nor did he ever intend to accept or consider those lots as payment of his debt, or any part thereof, unless upon the terms of the agreement aforesaid, and upon the fulfilment thereof, it is impossible to mistake his meaning, or give any other reasonable construction to the answer, than that it amounts to a total denial of an absolute acceptance of the deed; but that it was left with him in part fulfilment of the agreement, which was to be completed and settled on the performance of the other part by Sands. This was, by no means, an unusual or extraordinary course of proceeding. Clason might, perhaps, have elected to consider this an absolute delivery, and binding upon Sands; but when he positively denies that he ever did accept it, or intend to accept it, as payment, to consider it an unconditional acceptance, would be forcing upon him a partial fulfilment of an entire agreement, in the face of established principles of law. And what evidence is there opposed to this positive denial of any acceptance of the deed? Nothing but the circumstances of the deed remaining in his possession, and his not proving his debt before the commissioners of bankruptcy. These are circumstances, however, of little weight, when we consider the situation in which Clason was placed. He had strong reasons to suspect that Lewis Sands, who had executed the deed to him, was a mere trustee for his father; and if so, the deed would be void, being given after the bankruptcy of C. Sands. Proceedings were about this time instituted in chancery by the creditors of C. Sands, to be relieved against certain fraudulent conveyances made by C. Sands to his sons; which, if effected, would let in the judgments held by the appellant against Sands. He had a right to lay by, waiting events, and not exhibit his claim to the commissioners. No acts of ownership have been exercised over the Washington lots; and to construe a mere silence into an acceptance of the deed would, under the circumstances in which the appellant was placed, be unreasonable.
With respect to the 4,000 dollars charged in the bill to have been received by the appellant, in addition to the said lots, in full satisfaction of all claims and demands, the answer fully and positively denies the receipt of that sum, or any other sum, at imy time, in satisfaction or discharge of the appellant’s demands, *554 or on any other account, or for any other purpose whatever. 1 am unable to discover any ambiguity whatever in'this denial. It *s a full, complete, and unequivocal negation of the charge in the bill, and superadds the broad denial of the receipt of that sum, at any time, or on any account. In this particular, and in this only, jg the answer contradicted by any testimony. Knox swears that a few days after Sands was discharged from imprisonment, he met Clason and asked .him how much he had got for his debt against Sands; to which he answered 4,000 dollars. This proof is certainly contradictory to the answer. I see no ground upon which they can be reconciled. It is, however, only oath against oath, and the allegation in the bill stands without proof. This alone would be a sufficient answer. But I think there are some circumstances tending to show that Knox must be mistaken, if he means to be understood as saying, that Clason told him he had received that sum in cash. The bill charges the money to have been received in the year 1805; and the conversation spoken of by Knox must have been in 1801. Knox says Clason told him Sands was indebted to him 15,000 or 16,000 dollars, and that he had obtained judgment for the said debt. No such judgment appears as the foundation of the appellant’s claim. And it is certainly worthy of notice that this is only proof of a confession made in a casual conversation, several years ago, liable to have been misunderstood, or to have been forgotten by lapse of time. Sands was himself a witness, and the respondents must have known from the answer, that it was necessary for them to support the allegation in the bill by more than one witness; the omission, therefore, to make the inquiry of Sands, if chargeable as neglect in either party, must rest on the respondents. I think, upon the whole, we may safely conclude that the facts- denied by the answer are as strong, if not stronger, than those affirmed by the deposition of Knox, which brings the case within the rule, that no decree can be made against the appellant upon such evidence.
The only remaining inquiry is, how far the respondents are entitled to the relief prayed for, as to an entry of satisfaction of these judgments. The judgment assigned by Low to the appellants must, I think, be considered unsatisfied, and as a legal lien on the property. Had the judgment against the endorsers been paid and discharged, without at the same time taking an assignment of the judgment against the principal, it might have operated as,a satisfaction of that judgment. But the appellant stands before the *555 court as a purchaser and assignee of the judgment, and the money paid by him was the consideration for the assignment. The judgments against the principal and the security are separate and distinct. I see no reason why the security may not purchase a judgment against the principal as well as any other person. None of the cases cited on the argument warrant a different conclusion; (2 Johns. Cas. 231. 2 Vern. 608.1 Atk. 135. 2 Ves. 172. 570.) and a contrary doctrine would seem unreasonable and unjust. With respect to the other judgment, (assuming the answer of the appellant to be true,) there is no pretence of its having been satisfied. The two judgments are, therefore, in force, and entitled to priority of satisfaction. I think, however, that the appellant ought not to be allowed more than a moiety of these judgments» For it appears from his answer, that the consideration for the assignment of the one was paid by Clason and Stanly. And although the assignment was made to Clason alone, yet he must be deemed a trustee for Stanly as to a moiety ; the other judgment stands in the name of Clason and Stanly. They are, therefore, to be taken as joint owners of both judgments. And the bill having been taken pro confesso against Stanly, is an admission, on his part, of satisfaction so far as his interest is concerned. The answer or defence of Clason cannot enure to the benefit of Stanly. (1 Caines’ Cas. in Er. 121.) I have not met with any case in the books where a bill has been taken pro confesso against one only of several defendants. But in order to give the force and effect to this default, which is contemplated by the statute, the proceedings must, thereafter, be considered in the nature of separate suits, especially, where the nature of the controversy is such as to admit of distinct consideration, and separate relief. Where the defence set up goes to the essence and foundation of the claim made by the bill, and that is wholly destroyed by the party appearing, there may be some difficulty in enforcing the decree against the party who has suffered the bill to be taken pro confesso. But in the present case, we may consider Clason as attempting to enforce the collection of a debt due to himself and his copartner, when his copartner has acknowledged satisfaction as to his claim. If Stanly is to be considered jointly interested with Clason, it was no doubt competent to him to release or acknowledge satisfaction, so far as his interest is concerned, and his default as equivalent to such acknowledgment; and his rights are to be viewed in the same tight as if he had appeared and aijgwered, and confessed the facts *556 stated in the bill. No injustice is done to Clason; a moiety is all he shows himself entitled to. If the sole and exclusive right to the partnership debts has been transferred to him, he ought to have shown it. This answer, it is true, states a dissolution of the partnership in 1803; and that by an agreement between him and Stanly all the property, debts and effects of the copartnership became vested in him solely. The dissolution of the partnership is proved, but there is no evidence of the agreement in relation to the partnership concerns. The answer, in this respect, is not evidence. It does not form a part of the discovery sought by the bill; and if the appellant claimed the sole right to these judgments, he should have proved the agreement set up in his answer. The testimony on this point is insufficient. The witnesses only state that it was generally understood that Clason was the principal partner of the firm, and that the funds were furnished by him, and that he had the principal, if not the sole direction of the business, after the dissolution. This testimony is too vague and uncertain, either to establish the terms of the partnership, or the transfer of the partnership property to the appellant. As the facts now appear before us, Clason and Stanly are equally interested in these judgments, and the appellant is only en titled to receive satisfaction for a moiety of them. No interest, however, ought to be allowed. The appellant relies on his legal lien, and was about enforcing payment by execution, under which he could not have recovered interest. The judgments were upon promissory notes. And at law, no interest subsequent to the judgment can be recovered under the execution, unless the judgment is upon a penalty., The same rule has been recognised in chancery. The question - of interest rests, perhaps, in the sound discretion of the court, and I should be inclined not to allow it on these judgments, 'because the interest is not a legal lien on the land; and as it is this lien on which the appellant rests, he ought to be satisfied with what he would have recovered had he proceeded under his executions. (6 Johns. Rep. 284. 2 Ves. jun. 157. 162.)
With respect to the deed for the Washington lots, I should rather incline to leave it untouched by the present determination. It is not made necessary, by the state of the case, to decide upon it. The bill in the court of chancery does not seek for any relief against this deed. It has been drawn in question only by the allegation of its having been accepted in satisfaction of the appellant’s demand, but which the respondents have failed, to establish. The' *557 appellant may have an equitable lien on these lots, for the payment of the note of 3,200 dollars, and his other small account, and which ought to be taken into consideration, if the present decree is to extend to that deed.
I am, accordingly, of opinion, that the appellant is entitled only to a moiety of the two judgments, and that satisfaction thereof ought to be entered, on his receiving that amount.
Kent, Ch. J. and Van Ness, J. were of the same opinion.
Platt, Hall, Hopkins, Phelps, and Livingston, Senators, also concurred.
A majority of the court* being of opinion that the decree of the chancellor ought to be reversed in toto, it was thereupon ordered, ad judged, and decreed, that the decree of the court of chancery be reversed, and that the respondents’ bill be dismissed; and that 1 the respondents pay to the appellant his costs in the court of chancery to be taxed, and that the record be remitted, &c.
March 24, 1812.

 1 Lev. 63. 1 Sid. 76. 1 Keb. 284. 2 Tidd, 805.

 For reversing in toto. 11. For reversing in part 8.