797 F.2d 151
 5 Fed.R.Serv.3d 1408
 George FARZETTA
v.
TURNER & NEWALL, LTD., Bell Asbestos Mines, Ltd., Turner
Asbestos Fibres, Ltd., Brinco Mining Ltd., Asbestos
Corporation, Ltd., Carey Canada, Inc., Johns-Manville Corp.;
Johns-Manville Amiante Canada, Inc.; Managing Agent of
Johns-Manville Sales Corp.; Huxley Development Corp.; Gaf
Corporation; the Celotex Corporation Inc.
v.
CERTAINTEED CORP.; Certain Teed Corp.; Special Materials
Inc-Wisconsin; Norca Corporation.
Appeal of BELL ASBESTOS MINES, LTD.
Appeal of ASBESTOS CORPORATION, LTD.
 Nos. 85-1759, 85-1760.
 United States Court of Appeals,
Third Circuit.
 Argued June 6, 1986.
Decided Aug. 1, 1986.
 
 Frederic L. Goldfein (argued), Ellen Brown Furman, Goldfein and Joseph, Philadelphia, Pa., for appellants.
 Edward Rubin (argued), Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for appellee.
 Before GIBBONS, BECKER and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 In this diversity case two asbestos suppliers appeal from default judgments entered against them after they declined to defend a tort action brought by an individual who alleged that he had contracted asbestosis by virtue of contact with asbestos supplied by them. We affirm.
 
 I.
 
 2
 The appellants are Bell Asbestos Mines, Ltd. (Bell) and Asbestos Corporation, Ltd. (ACL), corporations that supply raw asbestos to asbestos processors. The appellee is George Farzetta. From August 1950 until January 1982 Farzetta worked in an asbestos factory located in Ambler, Pennsylvania that processed asbestos fiber supplied by Bell and ACL. In January 1982 he was diagnosed as having asbestosis.
 
 
 3
 Sometime early in 1982 Farzetta filed a complaint in the Court of Common Pleas of Montgomery County, Pennsylvania, naming as defendants Bell, ACL, and a third corporation that supplied asbestos fiber to the plant at which Farzetta had worked, Brinco Mining Company, Ltd. (Brinco). After removing the case to the Eastern District of Pennsylvania, all three defendants filed answers in which each asserted that Farzetta was barred from recovering because he had assumed the risk of exposure to the asbestos.
 
 
 4
 The case went to trial in April 1985. Citing financial difficulties, Bell and ACL chose not to defend, leaving Brinco as the only participating defendant. Farzetta then moved under Rule 55 of the Federal Rules of Civil Procedure for default judgments against Bell and ACL. In defense they argued that default judgments would be improper because they had filed answers, actions they claimed required Farzetta to prove his case, regardless of whether they defended. The district court deferred decision on Farzetta's motion.
 
 
 5
 Farzetta then presented his case, proceeding upon a theory of strict liability and contending that the defendants had failed to place adequate warning labels on the packages of raw asbestos they sold to his employer. Brinco adduced evidence bearing on its assumption-of-risk defense.
 
 
 6
 By way of special interrogatories the jury found that the asbestos supplied by all three defendants was defective because of the absence of proper warnings and further found that those defects were substantial causal factors in physical injuries sustained by Farzetta. However, the jury then responded "yes" to the following question: "Has the defendant Brinco Mining, Ltd., proved by a preponderance of the evidence that the plaintiff [assumed the risk]?" Interrogatories to the Jury at 3, reprinted in Joint Appendix at 16.
 
 
 7
 At this point the jury returned to the courtroom, and the district court entered judgment in favor of Brinco. It then addressed the outstanding motion for the default judgments. Bell and ACL argued that the jury's finding that Farzetta had assumed the risk vis-a-vis Brinco compelled the entry of judgments in their favor. Although the court rejected this argument, it did not grant Farzetta's motion for the default judgments; rather it sent the jury back to asses damages against Bell and ACL. While the jury was deliberating on this issue, the district court returned to the default motion and granted it from the bench. See Trial Transcript (May 1, 1985), reprinted in Joint Appendix at 95-96.[1]
 
 
 8
 Shortly thereafter both Bell and ACL filed motions requesting the district court to "amend the judgment in accordance with the jury verdict." The district court denied both motions, see Farzetta v. Bell Asbestos, Ltd., Civil Action No. 82-1241 (E.D.Pa. Oct. 4, 1985) (Bell order); Farzetta v. Bell Asbestos, Ltd., Civil Action No. 82-1241 (E.D.Pa. Oct. 4, 1985) (ACL order), and this appeal followed.
 
 II.
 
 9
 On appeal Bell and ACL assert that the district court erred in entering, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, default judgments against them. We can reverse the district court only if we find that it abused its discretion in entering the judgments. See C. Wright & A. Miller, Federal Practice & Procedure Sec. 2693, at 472-73 (1983); cf. Walker v. Tilley Lamp Co., 467 F.2d 219 (3d Cir.1972) (per curiam) (applying abuse-of-discretion standard in appeal of district court order denying Rule 55(c) motion seeking vacation of entry of default); Giordano v. McCartney, 385 F.2d 154, 155 (3d Cir.1967) (applying abuse-of-discretion standard in appeal of district court order denying Rule 60(b) motion).
 
 
 10
 In support of their assertion that the district court abused its discretion, Bell and ACL rely on a nineteenth century Supreme Court case in which the Court reversed a district court's default judgment. In that case, Frow v. De La Vega, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872), the plaintiff De La Vega had filed a complaint against fourteen defendants, charging eight of them with a "joint conspiracy to defraud him" out of a piece of real property. One of those eight was Frow; he failed to file a timely answer, and the district court entered a pretrial default judgment against him. The case then went to trial, and the court "decided the merits of the cause adversely to the complainant and dismissed the bill." Id. at 553. Frow appealed.
 
 
 11
 In a one-page opinion the Court reversed. Justice Bradley wrote,
 
 
 12
 If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the other, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.
 
 
 13
 ... [I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike--the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.
 
 
 14
 Id. at 554. Contending that the relationship between Frow and the other defendants in Frow resembles the relationship between Brinco and them, Bell and ACL assert that Frow requires us to reverse the default judgments the district court entered against them.
 
 
 15
 Frow undoubtedly stands for the proposition that in certain circumstances it is inappropriate to enter a default judgment against one defendant when other defendants in the same case have prevailed. Unfortunately, the Court's opinion does not identify those specific circumstances.[2] However, we believe that Frow stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved. This characterization of Frow is consistent with that endorsed by other Courts of Appeals. See Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc., 740 F.2d 1499, 1511-12 (11th Cir.1984) (reversing district court refusal to grant defendant's Rule 55(c) motion to set aside default judgment in contract case and noting that under Frow plaintiff who failed to recover from one defendant because plaintiff had breached contract could not recover from a second defendant who had not defended the suit); In re Uranium Antitrust Litigation, 617 F.2d 1248, 1256-58 (7th Cir.1980) (affirming default judgment in antitrust case and distinguishing Frow on grounds that, because liability in antitrust cases was joint and several, nonliability of some defendants would not preclude logically liability of other defendants); International Controls Corp. v. Vesco, 535 F.2d 742, 746 & n. 4 (2d Cir.1976) (affirming default judgment in Securities Exchange Act case and distinguishing Frow on grounds that it only controls "in situations where the liability of one defendant necessarily depends upon the liability of the other" ), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1977).
 
 
 16
 The issue we must resolve is whether there were proved at trial facts that as a matter of logic preclude the liability of Bell and ACL. They argue that the jury's finding that Farzetta had assumed the risk of exposure to Brinco's asbestos shields them from the default judgments. Therefore, viewed in light of our standard of review, the question this appeal presents is: Did the district court abuse its discretion in concluding that the fact that Farzetta had assumed the risk of exposure to Brinco's asbestos did not compel logically the conclusion that he had also assumed the risk of exposure to Bell's and ACL's asbestos? See infra note 3.
 
 
 17
 Addressing the relevance of the jury finding that Farzetta had assumed the risk of exposure to Brinco's asbestos to them, Bell and ACL argue,
 
 
 18
 The defense of assumption of the risk applied to [Bell and ACL] as well as to their co-defendant Brinco. Throughout the course of the trial asbestos was referred to generically.... The fiber supplied by the defendant Brinco and [Bell and ACL] was indistinguishable. Further [Bell and ACL] and defendant Brinco supplied asbestos fiber to [Farzetta's places of employment] during the same period.
 
 
 19
 Appellant's Brief at 10. Bell and ACL's first two assertions--that the parties referred to asbestos generically during the trial and that the asbestos supplied by the different defendants was indistinguishable--may well be true, but they are irrelevant to whether there is any necessary relationship between Farzetta's having assumed the risk of exposure to asbestos supplied by Brinco and his having assumed the risk of exposure to asbestos supplied by appellants Bell and ACL. The third assertion, however, is relevant, for, if all three defendants supplied asbestos fiber to Farzetta's employer at the same time, one would assume that, if all the fiber was indistinguishable and Farzetta assumed the risk of exposure to some of it, he must have assumed the risk of exposure to all of it.
 
 
 20
 Despite the logical appeal of the argument that relies on this latter assertion, we reject it, for the record does not support its factual predicate--that all three defendants supplied similar quantities of asbestos fiber to Farzetta's employer at the relevant times. Farzetta worked at the processing plant from 1950 until 1982. During the trial he adduced evidence that established that before 1956 Bell and ACL supplied to Farzetta's employer significantly more asbestos than did Brinco. Furthermore, Farzetta notes on appeal that the jury could have concluded from the assumption-of-risk evidence relied upon by Brinco that Farzetta did not actually assume the risk of exposure to asbestos until 1956. In light of these two factors it is entirely possible that the jury could have found that, although Farzetta had assumed the risk of exposure to asbestos supplied to his employer after 1956, he had not assumed such a risk prior to that date and that because Bell and ACL had been the principal suppliers of asbestos before 1956 those two defendants could be liable even though Brinco would not be. Consequently, absent a finding by the jury that Bell and ACL supplied asbestos simultaneously with Brinco, the fact that the jury concluded that Farzetta had assumed the risk of exposure to Brinco's asbestos does not compel the conclusion that he also assumed the risk of exposure to Bell's and ACL's asbestos.
 
 
 21
 We readily concede that sound arguments support Bell's and ACL's contention that the jury might have found that Farzetta had assumed the risk of exposure to their asbestos. However, Bell and ACL chose not to take that issue to the jury, and we can reverse the district court's entry of default judgments only if we conclude that the jury's finding that Farzetta had assumed the risk of exposure to Brinco's asbestos compels as a matter of logic the conclusion that he also had assumed the risk of exposure to the appellants' asbestos. On the record before us we have no problem concluding that the district court did not err in finding that there was not such logical relationship.[3] There is no basis therefore for applying a collateral estoppel against Farzetta in favor of Bell and ACL on the issue of assumption of risk.
 
 III.
 
 22
 In contesting the default judgments appellants Bell and ACL rely solely on the contention that the Supreme Court's decision in Frow mandates reversal. Since we reject that contention, the judgment of the district court will be affirmed.
 
 
 
 [1]
 The appendix that accompanied the parties' appellate briefs does not include a copy of an order entering the default judgment, and there is some question as to whether the district court issued any such order. However, in light of the text of the above-cited transcript and the district court docket sheet, which reflects the entry of judgments against Bell and ACL, we assume that both appellants are subject to default judgments
 
 
 [2]
 The ambiguity in the opinion is largely attributable to the Court's failure to detail the reasoning underlying its holding. For instance, Justice Bradley fails to explain why the default judgment at issue there was "unseemly," "absurd," and "unauthorized by law" (because it was illogical?, because it was inequitable?, because it was contrary to uncited precedent?), and, as reported, the case neither details the relationship between Frow and his co-defendants (Were they all accused of the exact same acts?, Were they linked within a corporate structure?), nor explains the theory under which the plaintiff proceeded (What is a "joint conspiracy to defraud"?), nor tells us exactly why the defendants who prevailed did prevail (plaintiff's inability to prove case?, defendant's establishment of an affirmative defense?, etc.)
 
 
 [3]
 Although we apply an abuse-of-discretion standard in reviewing an order denying vacatur of default judgment, our scope of review of any legal questions arising in this context is of course plenary. It would appear that the precise question we decide in this case--whether, under Frow, the fact that Farzetta assumed the risk of exposure to Brinco's asbestos logically compels the conclusion that he also assumed the risk of exposure to Bell's and ACL's asbestos--is one of law. Even under a plenary standard of review, however, we reach the same result