*Thompson v. Booth*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 22-978

**JAMES E. MOORE, JR., AKA KEVIN THOMPSON,**
*Plaintiff-Appellee,*

v.

**TROY BOOTH,**
*Defendant-Appellant.*[*]

---

On Appeal from the United States District Court
for the Southern District of New York

---

ARGUED: JUNE 18, 2024
DECIDED: NOVEMBER 25, 2024

---

Before:     LYNCH, CARNEY, and MENASHI, *Circuit Judges*.

In 2016, Plaintiff-Appellee James E. Moore, Jr.—also known as Kevin Thompson—brought an action under 42 U.S.C. § 1983 against Defendant-Appellant Troy Booth and four other corrections officers at Fishkill Correctional Facility. The five officers—represented by the

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

New York State Attorney General—each filed an answer asserting the affirmative defense that Thompson failed to exhaust administrative remedies as the Prison Litigation Reform Act required. In 2020, the Attorney General withdrew as counsel for Booth because Booth was not participating in the litigation. Booth then failed to appear for a deposition and a pre-motion conference. As a sanction for that non-participation, the district court struck Booth's answer. The district court eventually dismissed the claims against the four other officers on the ground that Thompson failed to exhaust administrative remedies. However, the district court granted a default judgment against Booth—because his answer, including the exhaustion defense, had been struck—and awarded damages of $50,000.

We conclude that the district court abused its discretion in granting the default judgment against Booth while dismissing on the merits the claims against the litigating defendants. Pursuant to the prohibition on inconsistent judgments set forth in *Frow v. De La Vega*, 82 U.S. 552 (1872), once the district court determined that Thompson could not maintain his claims against the litigating defendants because he failed to exhaust administrative remedies, it should have dismissed the claims against Booth for the same reason. We vacate the default judgment and remand to the district court with instructions to enter a judgment in favor of Booth.

—————————

RACHEL A.H. HORTON, DLA Piper LLP (US), Philadelphia, PA (Simeon S. Poles, DLA Piper LLP (US), Philadelphia, PA; Samantha L. Chaifetz, Julia Deutsch, DLA Piper LLP (US), Washington, DC, *on the brief*), *for Plaintiff-Appellee*.

CHARLES D. COLE, JR., Newman Myers Kreines Harris, P.C., New York, NY, *for Defendant-Appellant*.

MENASHI, *Circuit Judge*:

Plaintiff-Appellee James E. Moore, Jr.—also known as Kevin Thompson—was an inmate at Fishkill Correctional Facility, where Defendant-Appellant Troy Booth was a corrections officer.[1] In 2016, Thompson sued Booth and four other corrections officers under 42 U.S.C. § 1983 for excessive force. The five officers—represented by the New York State Attorney General—each filed an answer asserting the affirmative defense that Thompson had failed to exhaust administrative remedies before bringing his lawsuit as the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), required. In 2020, the Attorney General withdrew as counsel for Booth because Booth was no longer participating in the litigation. Booth then failed to appear for a deposition and a pre-motion conference. As a sanction for his non-participation, the district court struck Booth's answer. The district court eventually dismissed the claims against the four other officers on the ground that Thompson had failed to exhaust his

---

[1] In this litigation, the appellee has used the names Kevin Thompson and James Moore. *See* Motion to Amend the Caption, *Thompson v. Booth*, No. 22-978 (2d Cir. May 31, 2022), ECF No. 30 (seeking to amend the caption to include the appellee's "birth name" of James E. Moore, Jr. rather than the "alias name" of Kevin Thompson); Notice of Change of Address, *Thompson v. Booth*, No. 16-CV-3477 (S.D.N.Y. Apr. 10, 2017), ECF No. 47 (requesting that correspondence include "James Moore on the envelope as [an] A.K.A. name"). The appellee testified that at the time of the incident that gave rise to this lawsuit he was using only the name Kevin Thompson, App'x 249, and that is the name he uses in his briefing in this appeal. We therefore refer to him as Kevin Thompson in the rest of this opinion.

administrative remedies. However, the district court permitted Thompson to seek a default judgment against Booth, whose answer—including the same exhaustion defense as the other defendants—had been struck. The district court granted the default judgment against Booth and, after a damages inquest, awarded damages of $50,000.

Booth now appeals that judgment. We conclude that the district court abused its discretion when it granted a default judgment against Booth after it had already dismissed identical claims on the merits against the litigating defendants based on a defense that applied equally to Booth. "[A] default judgment that creates an 'incongruity' with a judgment on the merits is 'unseemly and absurd, as well as unauthorized by law.'" *Henry v. Oluwole*, 108 F.4th 45, 54 (2d Cir. 2024) (quoting *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). For that reason, "if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others." *Frow*, 82 U.S. at 554. Pursuant to this "longstanding principle," *Henry*, 108 F.4th at 54, once the district court determined that Thompson could not maintain his claims against the litigating defendants because he had failed to exhaust administrative remedies, it should have dismissed the claims against Booth for the same reason. We vacate the default judgment and remand to the district court with instructions to enter judgment for Booth.

## BACKGROUND

In 2016, Thompson brought this action under 42 U.S.C. § 1983 against multiple defendants—including Booth and four other corrections officers—asserting violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. The complaint alleged that in 2014, when Thompson was incarcerated at Fishkill, the five officers assaulted him while he was having a seizure. Allegedly,

4

as a result of the assault and the subsequent failure of the prison to provide adequate medical care, Thompson lost several teeth, suffered hearing loss in one ear, and sustained injuries to his hand and neck.

In 2019, each of the officer defendants filed an answer asserting affirmative defenses, including the defense that Thompson had failed to exhaust administrative remedies before filing his lawsuit as the PLRA required.[2] At the time, the Attorney General represented all five officers. In January 2020, however, the Attorney General moved to withdraw as counsel for Booth because Booth had stopped communicating with counsel. The district court granted the motion to withdraw in April 2020. No substitute counsel appeared on Booth's behalf, and Booth did not file a pro se notice of appearance.

In February 2020, while the withdrawal request was still pending, Thompson moved to compel Booth's deposition. A magistrate judge granted Thompson's motion and ordered Booth to appear at a deposition on March 3, 2020. The magistrate judge ordered the Attorney General, who still represented Booth, to serve the order on him. The Attorney General attempted to do so by calling and texting Booth. Booth did not appear for the scheduled deposition. The district court then set a pre-motion conference for May 11, 2020. Thompson's attorney attempted to notify Booth of the conference by telephone, but Booth apparently hung up when the attorney identified herself as Thompson's counsel. Booth did not participate in the pre-motion conference.

---

[2] The record on appeal does not include a copy of Booth's answer, but it does include the four other officers' answers, which are all identical and assert the PLRA exhaustion defense. The parties do not dispute that Booth's answer asserted the same defense in the same manner.

In June 2020, Thompson filed a motion for sanctions against Booth that sought to strike Booth's answer as a penalty for his lack of participation in the litigation. Booth did not respond to the motion. On March 10, 2021, the district court issued an order granting the motion and striking Booth's answer. The district court concluded that "Booth's failure to obey the court order directing him to appear at a March 3, 2020 deposition coupled with his refusal to speak to counsel on May 5, 2020, appear for the May 11, 2020 court conference, file opposition to Plaintiff's motion for sanctions, or communicate with the [c]ourt in any way since the AG Office's motion to withdraw as counsel was granted on April 3, 2020, demonstrate the type of willful and bad faith conduct that justifies the striking of Booth's Answer." *Thompson v. Booth*, No. 16-CV-3477, 2021 WL 918708, at *11 (S.D.N.Y. Mar. 10, 2021). The clerk of court mailed the order to Booth's address but it was returned as undeliverable. On April 9, 2021, Thompson filed a proposed certificate of default, and the clerk entered the default the same day. The certificate of default was sent to Booth's address via certified mail and U.S. mail.

In August 2021, the district court held an evidentiary hearing to address whether Thompson had exhausted his administrative remedies as the PLRA required for his claims to proceed. Based on the evidence, the district court determined that Thompson had not utilized the administrative grievance process and "failed … to establish that the administrative grievance process was unavailable to him." *Thompson v. Booth*, No. 16-CV-3477, 2022 WL 769386, at *1 (S.D.N.Y. Mar. 14, 2022).[3] As a result, the district court concluded that

---

[3] *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.") (emphasis added).

Thompson had "failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act" and that Thompson's claims against all of the defendants—except for Booth—must be dismissed "with prejudice." *Thompson*, 2022 WL 769386, at *1. At the same time, "[i]n light of Booth's failure to participate in the action," the district court granted Thompson "permission to seek a default judgment on liability against him." *Id.* But the district court required that Thompson "specify" in his motion "why it is permissible for this case to proceed with respect to Defendant Booth, despite the [c]ourt's finding that Plaintiff failed to exhaust his administrative remedies under the PLRA." Order at 1, *Thompson v. Booth*, No. 16-CV-3477 (S.D.N.Y. Aug. 4, 2021), ECF No. 193.

Thompson moved for a default judgment on October 8, 2021. He argued that a default judgment was proper because (1) exhaustion of administrative remedies is an affirmative defense that can be waived, and (2) Booth had effectively waived the defense when the district court struck his answer. The district court then ordered Booth to show cause why a default judgment should not be entered against him. On October 20, 2021, Booth responded to the district court for the first time since the Attorney General withdrew from representing him. In a letter to the district court, Booth stated that he had been "under the impression that I was being represented by NYSCOPBA lawyers in this case," referring to the corrections officers' union, and he said that he "should have been awarded the same [judgment] as my colleagues," referring to his co-defendants who obtained a judgment of dismissal. App'x 823. In response to the letter, the district court directed Booth to file a brief in opposition to the pending motion for a default judgment by November 22, 2021. Booth did not file a brief in opposition. On December 7, 2021, the district court entered a

default judgment against Booth on liability and scheduled a damages inquest to be held on March 10, 2022.

On December 9, 2021, Booth wrote a second letter to the district court requesting "assistance from the court" because he was entitled to legal counsel but was "not being represented." *Id.* at 31. The district court then extended the deadline for Booth to file a brief in opposition to Thompson's damages assessment, but Booth neither filed a responsive brief nor appeared at the damages hearing on March 10, 2022. Instead, Booth wrote a third letter to the district court that again requested "assist[ance] from the [c]ourt" because he had "written several letters" but had "not received any response." *Id.* at 32. On March 14, 2022, the district court received a fourth letter from Booth—dated March 11, 2022—in which Booth explained that from 2016 to 2019 he "suffered from addiction" and as a result was "homeless and lost everything," but he was "now getting my life back on track." *Id.* at 999. Booth asked the district court to reopen the proceedings "due to my life situation." *Id.* On the same day—March 14, 2022—the district court ordered that judgment be entered against Booth awarding "compensatory damages in the amount of $50,000." *Thompson*, 2022 WL 769386, at *2.

On March 20, 2022, Booth wrote a fifth letter to the district court by e-mail, stating that he was "being held accountable for $50,000" and that "something unfair is going on with this case." App'x 1005. He wrote that, among other things, his "union went against a contract agreement and stop[ped] representing me," he was unaware that he was representing himself, he "did not receive" certain documents, and other documents had been sent "to the wrong address." *Id.* The district court construed the fifth letter "as a motion to vacate the default judgment" and "denied it on the ground[] that [Booth's] reasons for continually failing to appear were insufficient to warrant

8

vacatur." *Thompson v. Booth*, No. 16-CV-3477, 2022 WL 1501041, at *2 (S.D.N.Y. May 12, 2022). On March 29, 2022, the district court entered a final judgment against Booth.

On March 30, 2022, Booth again moved to vacate the default judgment. In his motion, Booth argued that (1) his default was not willful because he believed he was represented by counsel and, given his homelessness, did not receive the notices from the district court, (2) he had a complete and meritorious defense to the claims against him based on Thompson's failure to exhaust administrative remedies, and (3) Thompson would not be prejudiced by vacatur of the default judgment because he was aware of the exhaustion issue and already litigated it against the other defendants. *See* App'x 1016-21. On April 28, 2022, while the second motion to vacate remained pending, Booth filed a notice of appeal from the final judgment entered on March 29, 2022. On May 12, 2022, the district court denied the second motion to vacate on the grounds that (1) Booth's default was willful because he must have received some notices and his "attempts to rebut his knowing decision to not appear, multiple times, are meager at best," (2) Booth lacked a meritorious defense to the claims against him because his answer asserting the exhaustion defense had been struck, and (3) Thompson "would suffer significant prejudice if the judgment were set aside because he litigated this case for six years while [Booth] ignored the proceedings." *Thompson*, 2022 WL 1501041, at *3-4.

## STANDARD OF REVIEW

We review the entry of a default judgment for abuse of discretion. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006).

## DISCUSSION

Booth offers two arguments on appeal. First, he argues that the district court erred in granting a default judgment against him after it dismissed identical claims against the four other officers on a ground equally applicable to Booth. Second, Booth argues that the district court erred in striking his answer as a sanction. We agree with Booth's first argument and therefore need not reach the second.

Pursuant to the "longstanding principle" prohibiting "a default judgment that is inconsistent with a judgment on the merits," *Henry*, 108 F.4th at 53-54, once the district court determined that Thompson's complaint could not establish a viable cause of action against the four other officers because Thompson had failed to exhaust administrative remedies, it should have dismissed the claims against Booth for the same reason. The district court abused its discretion by entering a default judgment against Booth that was inconsistent with the judgment on the merits in favor of his similarly situated co-defendants. Accordingly, we vacate the default judgment and remand the case to the district court with instructions to dismiss the claims against Booth.

## I

The Supreme Court held in *Frow v. De La Vega* that "a default judgment that creates an 'incongruity' with a judgment on the merits is 'unseemly and absurd, as well as unauthorized by law.'" *Henry*, 108 F.4th at 54 (quoting *Frow*, 82 U.S. at 554). *Frow* involved several defendants who were sued jointly. One defendant defaulted, and the district court entered a default judgment against that defendant. The litigation proceeded against the non-defaulting defendants, and the claims were dismissed on the merits. The Supreme Court reversed the default judgment, explaining that "[i]t would be unreasonable to

10

hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree." *Frow*, 82 U.S. at 554 (quoting *Clason v. Morris*, 10 Johns. 524, 538 (N.Y. 1812) (opinion of Spencer, J.)). Rather, the Court explained, "if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others." *Id.*

As we and other courts have recognized, "*Frow* prohibits directly inconsistent judgments." *Henry*, 108 F.4th at 54 (quoting *Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022)). For that reason, "if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001).

Thompson argues that the decision in *Frow* "hinged on joint and several liability" and "does not apply here" because the district court "did not impose joint liability."[4] We, along with the majority of the federal appellate courts, have held that the *Frow* principle is not limited to cases of joint liability but more generally "prohibits a default judgment that is inconsistent with a judgment on the merits." *Henry*, 108 F.4th at 53. As the Third, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have explained, the *Frow* principle applies when the defendants are "similarly situated" or have "closely related defenses" even if not jointly liable.[5] The idea is that when

---

[4] Rule 28(j) Letter at 1-2, *Thompson v. Booth*, No. 22-978 (2d Cir. Jun. 25, 2024), ECF No. 159.

[5] *See Garamendi v. Henin*, 683 F.3d 1069, 1082-83 (9th Cir. 2012) (explaining that the Ninth Circuit applies "the rule beyond jointly liable co-defendants

11

to those that are '*similarly situated*,' such that the case against each rests on the same legal theory; it would be 'incongruous and unfair' to allow a plaintiff to prevail against defaulting defendants on a legal theory rejected by a court with regard to an answering defendant 'in the same action'") (emphasis added) (quoting *First T.D. & Inv.*, 253 F.3d at 532); *United States ex rel. Costner v. United States*, 56 F. App'x 287, 288 (8th Cir. 2003) ("The principle on which *Frow* relies is that logically inconsistent verdicts should be avoided. Although joint liability is one circumstance in which such inconsistency may arise, it is not the only one. … The leading treatise is in accord with this view: 'Although the rule developed in the *Frow* case applies when the liability is joint and several, it probably can be extended to situations in which several defendants have *closely related defenses*.'") (emphasis added) (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure § 2690 (3d ed. 1998)); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[W]here a defending party establishes that [the] plaintiff has no cause of action this defense generally inures also to the benefit of a defaulting defendant. … The policy rationale for this rule is that it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to *similarly situated* defendants.") (emphasis added) (internal quotation marks, alteration, and citations omitted); *Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394, 1996 WL 48857, at *3 (10th Cir. 1996) ("We do not … believe that the applicability of the *Frow* rule hinges on whether the defendants are jointly and severally liable. The *Frow* rule is also applicable in situations where multiple defendants have *closely related defenses*.") (emphasis added); *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("[E]ven when defendants are *similarly situated*, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits.") (emphasis added); *see also Kelly v. Conner*, 769 F. App'x 83, 87 n.1 (4th Cir. 2019) (rejecting the argument that "several liability" precludes the application of *Frow* because "where a defending party establishes that plaintiff has no cause of action whether on a motion to dismiss or a motion for summary judgment[,] this defense generally inures also to the benefit of a defaulting defendant") (internal quotation marks and alterations omitted).

12

"facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved."[6]

Against these authorities, only the Seventh and D.C. Circuits have suggested—some time ago—that the *Frow* principle should be "limited to exclusively joint liability claims or situations where there is a single res in controversy."[7] Our court adheres to the majority view.

## II

We have not expressly considered whether the *Frow* principle applies when the merits judgment was based on an affirmative defense such as administrative exhaustion under the PLRA. Because a plaintiff's failure to exhaust administrative remedies is an affirmative defense, it may be waived by a defendant and a plaintiff may be entitled to a judgment even if the complaint does not plead—or the facts do not establish—that he exhausted those remedies. We have explained that the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement," *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016), and for that reason "inmates are not required to specially plead or

---

[6] *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986).

[7] *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1258 n.40 (7th Cir. 1980); *see also Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1986) ("*Frow* was about 'inconsistent adjudications as to joint liability or as to a single res in controversy,' and 'remains good law' in that setting. But the venerable *Frow* case should not be extended 'to a context for which it was never intended.'") (quoting *Uranium Antitrust Litig.*, 617 F.2d at 1257-58 & n.40).

demonstrate exhaustion in their complaints," *id.* (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Nevertheless, the exhaustion of administrative remedies "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)); *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA."). Because a lack of exhaustion acts as a threshold bar to the plaintiff's claims, we have said that a district court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams*, 829 F.3d at 122. At least one district court in this circuit has "concluded that dismissal with prejudice is appropriate" even with respect to defendants who "have not been served or appeared in [the] action" because unexhausted claims "are equally futile against them" as against those litigating defendants who have moved to dismiss. *Massey v. City of New York*, No. 20-CV-5665, 2021 WL 4459459, at *4 (S.D.N.Y. Sept. 29, 2021). And we have indicated that a district court may issue a "*sua sponte* dismissal of [a prisoner's] complaint for failure to exhaust his administrative remedies"—even "before [the] defendants were served"—as long as it provides the prisoner "notice and an opportunity to respond." *Mojias v. Johnson*, 351 F.3d 606, 608-11 & n.1 (2d Cir. 2003) (emphasis added).

In this way, an affirmative defense based on administrative exhaustion resembles an affirmative defense based on the statute of limitations, which may also be the basis for the dismissal of a complaint. *See Ellul v. Congregation of Christian Brothers*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is

14

ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

The Fifth Circuit has held that the *Frow* principle applies to a statute-of-limitations defense. As the Fifth Circuit explained, a "default judgment is only appropriate where the pleadings provide a sufficient basis for relief." *Brown v. City of Central*, No. 23-30146, 2024 WL 546340, at *9 (5th Cir. Feb. 12, 2024). "[P]leadings do not state a claim for relief against any party in [the] case" when the "claims are time-barred. It is no matter that the [statute-of-limitations] defense was not raised by [a defaulting defendant] because 'where a defending party establishes that [the] plaintiff has no cause of action this defense generally inures also to the benefit of a defaulting defendant.'" *Id.* (internal quotation marks and alteration omitted) (quoting *Lewis*, 236 F.3d at 768); *see also Lewis*, 236 F.3d at 768 (explaining that the "rationale for this rule is that it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants").

The Seventh Circuit, by contrast, has indicated that it might not apply the *Frow* principle to such a defense. *See Marshall & Ilsley Tr. Co. v. Pate*, 819 F.2d 806, 812 (7th Cir. 1987) (suggesting that "a default judgment against non-answering defendants would not necessarily be logically inconsistent with judgments in favor of other answering defendants" when "the answering defendants prevailed on an affirmative defense of statute of limitations" because "it is not clear that such an affirmative defense ought automatically to be applied for the benefit of non-answering defendants").

We agree with the Fifth Circuit. As noted above, our court along with the Fifth Circuit adheres to the majority view of the *Frow*

15

principle. Like the Fifth Circuit, we have explained that "prior to entering [a] default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation marks and alterations omitted); *accord Henry*, 108 F.4th at 55 ("To enter a default judgment, a district court must determine whether … the plaintiff's 'allegations establish liability as a matter of law.'") (alteration omitted) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). In other words, "a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief." *Henry*, 108 F.4th at 55 (quoting *Mickalis Pawn Shop*, 645 F.3d at 137 n.23). When the plaintiff has failed to exhaust administrative remedies, the PLRA bars his claims and therefore the "pleadings do not state a claim for relief against any party in [the] case," including defaulting defendants to whom the exhaustion defense equally applies. *Brown*, 2024 WL 546340, at *9.

It is true that the plaintiff was not required to plead exhaustion of administrative remedies in the complaint. But when the district court evaluates whether the allegations of the complaint state a valid claim for relief, the *Frow* principle requires the district court to take into account the evidentiary record on which it based its judgment with respect to the non-defaulting defendants. And when "facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant," the plaintiff is "estopped from obtaining a judgment against the latter defendant." *Farzetta*, 797 F.2d at 154. That is why, if the case has proceeded to trial, "to comply with the *Frow* principle prohibiting inconsistent judgments, [the district court] must disregard the allegations in [the] complaint that conflict with the jury verdict." *Henry*, 108 F.4th at 55. And if, as

16

in this case, the district court has conducted an evidentiary hearing to determine whether the plaintiff has exhausted the administrative remedies that were available to him, the district court must apply its findings on that issue when deciding whether to award the default judgment against the defaulting defendant.

### III

Applying the *Frow* principle to this case, we conclude that the district court abused its discretion when it entered a default judgment against Booth that was inconsistent with its prior judgment dismissing identical claims against the four other officers. Thompson's claims against each of the five officer defendants were identical. Each claim arose from the same alleged incident in which all five officers allegedly participated. Each claim was subject to the same exhaustion requirement under the PLRA. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). And because the claims against each of the officers arose from the same incident, the remedies Thompson was required to exhaust were the same.

The district court concluded that Thompson had failed to exhaust his administrative remedies and therefore lacked a viable cause of action against the four litigating officer defendants. That conclusion also meant that Thompson's pleadings could "not state a claim for relief against any party in [the] case," including Booth, because the PLRA barred Thompson's claims. *Brown*, 2024 WL 546340, at *9. It was "unreasonable" for the district court "to hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs

17

offered by the other[s], that in fact the plaintiff is not entitled to a decree." *Frow*, 82 U.S. at 554 (quoting *Clason*, 10 Johns. at 538 (Spencer, J.)); *see also First T.D. & Inv.*, 253 F.3d at 532 ("It would … be incongruous and unfair to allow the [plaintiff] to prevail against Defaulting Defendants on a legal theory rejected by the … court with regard to the Answering Defendants in the same action."). Once the district court dismissed the claims against the other officers because of a lack of exhaustion, it was required to deny the motion for a default judgment against Booth because it had determined that the complaint did not establish a viable claim for relief against Booth as well as the four other officers. *See Henry*, 108 F.4th at 55; *Mickalis Pawn Shop*, 645 F.3d at 137.

The district court abused its discretion in granting the motion for a default judgment.

## CONCLUSION

For the foregoing reasons, we vacate the default judgment and remand the case to the district court with instructions to enter a judgment dismissing the claims against Booth.

18